IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD RAY COTTMAN,       *

    Plaintiff,        *

v.               *     Civil Action No. BPG-08-1753

MICHAEL J. ASTRUE,    *
Commissioner of
Social Security,      *

    Defendant.       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM</u>

Plaintiff, Donald Ray Cottman, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of Social Security Act, 42 U.S.C. §§ 401-433. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (Paper Nos. 24, 31.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies plaintiff's Motion for Summary Judgment (Paper No. 24), and grants defendant's Motion for Summary Judgment (Paper No. 31).

I.   **Background**

Plaintiff first filed for a period of disability and DIB, as well as Social Security Income ("SSI"), on January 11, 1993.  (R. at 72-74.)  After plaintiff's application was denied initially and upon reconsideration, plaintiff, represented by counsel, appeared for a hearing before Administrative Law Judge ("ALJ") Charles F. Dirlam on February 15, 1996.  (R. at 223.)  In a decision dated August 30, 1996, ALJ Dirlam determined that plaintiff was not disabled at any time from the alleged onset date of his disability, September 18, 1990, to the date of the decision and, accordingly, denied plaintiff's January 11, 1993 application for benefits.  (R. at 220-233.)

Plaintiff filed a subsequent application for benefits on February 5, 1998. (R. at 291-93.) On February 8, 1999, the Social Security Administration ("SSA") denied plaintiff's application initially and on reconsideration because it determined that plaintiff was not disabled at any time on or before September 30, 1996, the date plaintiff's insurance coverage for DIB ended ("date last insured").[1]  (R. at 186-88, 190-91, 195-97, 199-200.) On December 20, 2001, plaintiff's February 5, 1998 claim was dismissed after he failed to appear for his scheduled hearing

---

[1] A claimant must establish disability on or before the date last insured to be entitled to a period of disability or DIB.  20 C.F.R. §§ 404.110, 404.132 (2009).

2

before an ALJ to review the SSA's decision.[2]  (R. at 173-76.)

On October 5, 2005, plaintiff filed a new application for benefits.  (R. at 304-05.)  In an Order of Dismissal dated January 23, 2007, ALJ Edward J. Banas dismissed plaintiff's October 5, 2005 claim under the doctrine of res judicata because he determined that the denial of plaintiff's January 11, 1993 and February 5, 1998 applications constituted final and binding decisions on plaintiff's claims for benefits through September 30, 1996, plaintiff's date last insured.  (R. at 179-81.)  The Appeals Council, however, vacated ALJ Banas' Order of Dismissal and remanded it to the ALJ for further proceedings on May 11, 2007.  (R. at 184-85.) The Appeals Council noted that, upon the February 19, 2002 publication of new SSA regulations on the evaluation of musculoskeletal impairments, the "Commissioner . . . indicated that the agency would not apply the administrative rules of res judicata in cases where a severe musculoskeletal impairment had been previously determined."  (Id.)  Since plaintiff was found to have a severe musculoskeletal impairment in his previous applications, the Appeals Council concluded that

---

[2] Plaintiff's February 5, 1998 claim was initially dismissed on August 21, 1999 after plaintiff withdrew his request for a hearing before an ALJ.  (R. at 201, 236-38.) On August 25, 1999, however, plaintiff requested a review of the Order dismissing this claim because he alleged that his attorney should never have withdrawn his request for a hearing. (R. at 243.)  The Appeals Council remanded plaintiff's case on May 7, 2001 for a new hearing, which plaintiff again failed to appear for on August 9, 2001.  (R. at 245-47, 269.)

plaintiff's claim could not have been dismissed <u>res judicata</u>. (<u>Id.</u>)

Plaintiff received a new hearing before ALJ Banas on August 30, 2007, where he was represented by counsel and testified. (R. at 44-71.)  Also testifying was a qualified vocational expert ("VE").  (<u>Id.</u>)  In a decision dated January 8, 2008, ALJ Banas again denied benefits.  (R. at 23-35.)  Although ALJ Banas found that plaintiff suffered from a severe combination of lumbar degenerative disc disease, osteoarthritis of the lower extremities, and post traumatic stress disorder ("PTSD") through September 30, 1996, plaintiff's date last insured, he concluded that these impairments did not individually or collectively rise to the level of any of the impairments in the Listings of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  (R. at 26-28.)  In addition, the ALJ found that plaintiff is capable of performing work that is available in the national economy based on his residual functional capacity ("RFC"), age, education, and past work experience.  (R. at 28-33.)  Accordingly, the ALJ concluded that plaintiff is not disabled for the purposes of awarding benefits.  (R. at 35.)

On May 6, 2008, the Appeals Council held that there was no basis for granting review of the ALJ's decision.  (R. at 11-15.) Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and

awarding plaintiff the benefits he has requested.  (Paper Nos. 1,
24.)  In the alternative, plaintiff asks this court to remand the
matter for further proceedings.  (<u>Id.</u>)

## II.  **Standard of Review**

The role of this court on review is to determine whether the
ALJ applied correct legal standards and whether substantial
evidence supports the ALJ's decision.  <u>Hays v. Sullivan</u>, 907 F.2d
1453, 1456 (4th Cir. 1990).  Substantial evidence is that which
"a reasoning mind would accept as sufficient to support a
particular conclusion."  <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642
(4th Cir. 1966); <u>accord</u> <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th
Cir. 2001).  It is more than a scintilla but less than a
preponderance of the evidence.  <u>Id.</u>  It is evidence sufficient to
justify a refusal to direct a verdict if the case were before a
jury.  <u>Hays</u>, 907 F.2d at 1456.  In reviewing for substantial
evidence, the court does not weigh conflicting evidence, make
credibility determinations, or substitute its judgment for that
of the ALJ.  <u>Id.</u>

The Commissioner has promulgated regulations that set forth
the following five-step analysis that an ALJ must follow in
determining whether a claimant is disabled:

(1)  The ALJ determines whether the claimant is engaged in
substantial gainful activity as defined in 20 C.F.R. §
404.1571 and § 416.971 <u>et</u> <u>seq.</u>  If so, the claimant is
not disabled.

(2)  If not, the ALJ examines the physical and/or mental

impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920.  If not, the claimant is not disabled.

(3)   If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments ("Listings").  If so, the claimant is disabled.

(4)   If not, the ALJ considers whether the claimant retains the RFC to do past relevant work ("PRW").  If so, the claimant is not disabled.

(5)   If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience.  The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

## III. Discussion

Plaintiff challenges ALJ Banas' findings on three grounds. First, plaintiff argues that the ALJ failed to consider plaintiff's right elbow ulnar nerve entrapment and left shoulder impingement during his step two analysis.  (Paper No. 24 at 3.) Second, plaintiff argues that the ALJ did not take into consideration the effects of plaintiff's alleged obesity during his step three analysis.  (Id. at 3-4.)  Third, plaintiff argues that the ALJ's RFC determination at step four was deficient because he "failed to set forth a narrative discussion describing

how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." (<u>Id.</u> at 4.)

### a. <u>The ALJ's Consideration of Plaintiff's Left Shoulder and Right Elbow Impairments at Step Two</u>

Plaintiff received medical treatment for right elbow and left shoulder discomfort from 1994 to 1996. (R. at 438, 442-46, 495-97.) Specifically, plaintiff's medical records indicate that he presented symptoms of left shoulder impingement and a rotator cuff tear during visits to Peninsula Orthopaedic Associates ("Peninsula") on October 21, 1994 and February 13, 1995. (R. at 446.) Plaintiff also complained of left shoulder discomfort during his Compensation and Pension Examination by the Veterans Administration on February 22, 1995. (R. at 495-97.) Plaintiff's medical records further indicate that: (1) William B. Moore, M.D., performed an arthrogram on plaintiff's left shoulder on February 18, 1995, which revealed an unremarkable subacromial region with no evidence of a rotator cuff tear; (2) plaintiff indicated to Dr. Moore that his left shoulder was improving during a follow-up examination at Peninsula on April 7, 1995; and (3) plaintiff continued to receive treatment at Peninsula after April 7, 1995 for various impairments, but did not receive any additional treatment for his left shoulder. (R. at 438, 442-44, 445.)

With respect to plaintiff's right elbow, the records indicate that plaintiff sought treatment at Peninsula for right

elbow pain and hand numbness on February 14, 1996.  (R. at 445.)
Pasquale Petrera, M.D., performed a follow-up examination on
March 5, 1996.  (Id.)  Dr. Petrera reported that an EMG "show[ed]
findings consistent with ulnar nerve entrapment at the elbow."
(Id.)  He also noted that plaintiff had "some improvement with
anti-inflammatories," and that plaintiff was not experiencing
significant pain from his related elbow arthritis and hand
numbness.  (Id.)  The records indicate that plaintiff continued
to receive treatment at Peninsula after his March 5, 1996
examination for other ailments, but did not receive any
additional treatment for his right elbow.  (R. at 442-44.)

    The only other reference to plaintiff's right elbow and left
shoulder impairments that the court was able to locate in the
789-page administrative record is a brief discussion about these
impairments during plaintiff's hearing before ALJ Banas on August
30, 2007.  (R. at 65.)  Specifically, in response to questions
from the ALJ, plaintiff testified that he still has trouble with
his right elbow and left shoulder and that he is on medications
for these impairments. (Id.)

    The ALJ included a brief discussion of plaintiff's right
elbow impairment in his step two analysis.  (R. at 26.)
Specifically, the ALJ, citing Dr. Petrara's report, noted that
"[i]n March 1996, EMG findings were consistent with ulnar nerve
entrapment of the right elbow, but hand numbness and pain

8

arthritis were reportedly not significant and improved with medication." (Id.)  The ALJ, therefore, concluded that plaintiff's right elbow ulnar nerve entrapment was not a severe impairment at the date last insured.  (Id.)  The ALJ did not explicitly consider whether plaintiff's left shoulder impairment was severe.  (Id.)  Plaintiff argues that the ALJ's consideration of these impairments at step two was insufficient.  (Paper No. 24 at 3 (citing Schoofield v. Heckler, 220 F. Supp. 2d 512 (D. Md. 2002)).)

An impairment is considered severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities" such as walking or lifting for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521(b).  On the other hand, an impairment is not considered severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ's findings at step two, like all of his findings, must be supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Further, the ALJ generally has a duty to explain his findings by making specific references to evidence supporting her conclusions, including the reasons for rejecting evidence which contradicts his findings.  Smith v.

Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986).  This duty,
however, is only triggered when the evidence in the record
generates an issue as to the severity of the plaintiff's
impairments.  Cf. Schoofield, 220 F. Supp. 2d at 522 (stating
that remand is to be expected if evidence in record "clearly
generates an issue as to a particular listing" and ALJ fails to
perform step three Listings analysis); Huntington v. Apfel, 101
F. Supp. 2d 384, 390-92 (D. Md. 2000) (finding that ALJ did not
have duty to compare evidence in record to criteria of relevant
Listings during step three analysis because there was not "ample
evidence" in record to support determination that plaintiff met
or equaled any Listing).

     The court finds that the ALJ was not required to make an
explicit finding regarding plaintiff's left shoulder impairment
in light of the limited evidence in the record.  As described
above, plaintiff's medical records indicate that plaintiff sought
treatment for his left shoulder from October 21, 1994 to April 7,
1995.  (R. at 438, 442-46.)  At his April 7, 1995 examination,
plaintiff indicated that his shoulder was improving and there is
no evidence in the record that plaintiff sought any additional
treatment after this date.  (Id.)  Accordingly, there is no
evidence in the record that could demonstrate that plaintiff's
impairment lasted at least 12 months.  Further, the only
objective testing in the record regarding plaintiff's left

shoulder was Dr. Moore's report of the arthrogram results, which indicated that the impairment was not severe.  (R. at 438.)

Similarly, the court finds that the ALJ adequately explained his finding regarding plaintiff's right elbow impairment in light of the evidence in the record and that the ALJ's finding was supported by substantial evidence.  Plaintiff's medical records indicate that plaintiff sought treatment for this impairment twice during a one-month period in 1996 and never sought any follow-up treatment.  (R. at 442-45.)  Again, the court concludes that plaintiff cannot establish, based on the evidence in the record, that this impairment lasted 12 months.  In addition, the limited evidence in the record regarding plaintiff's right elbow indicates that plaintiff was not experiencing significant pain (id.), which is sufficient evidence to support the ALJ's conclusion that plaintiff's right elbow impairment was not severe.

   b. **The ALJ's Consideration of the Effects of Plaintiff's Obesity at Step Three**

At step three of his decision, the ALJ considered whether plaintiff's lumbar disc disease and osteoarthritis in the lower extremities, which the ALJ determined to be severe at step two, rose to the level of any of the relevant Listings. (R. at 26-28.) Plaintiff argues that the ALJ erred by not considering the effects of his alleged obesity during this analysis. (Paper No. 24 at 3-4.)   According to plaintiff, since there is evidence in

11

the record that he weighed as much as 247 pounds around his date
last insured, the ALJ was required to consider the effects of his
obesity on these impairments pursuant to Social Security Ruling
("SSR") 02-1P.  (Id. (citing R. at 473).)

SSR 02-1P provides that "[o]besity may be a factor that both
'meets' and 'equals' [Listing] determinations" at step three.
SSR 02-1P, 2000 WL 628049 at *5, (S.S.A.).  It further provides
that while there is no specific Listing for obesity, obesity can
increase the severity of coexisting or related impairments to the
extent that the combination of impairments meets a Listing.  Id.

With respect to the definition of obesity, SSR 02-1P
references the National Institutes of Health ("NIH")
classifications, which classify a Body Mass Index ("BMI") of 30.0
or above as obesity.  Id. at *2.  It, however, also provides that
"there is no specific level of weight or BMI that equates with a
'severe' impairment" and that "although there is often a
significant correlations between BMI and excess body fat, this is
not always the case. . . . and it is [thus] possible for someone
with a BMI above 30 [to] not have obesity if a large percentage
of the weight is from muscle." Id. at *2, 4.

The court concludes that the ALJ was not required to
consider plaintiff's alleged obesity during his step three
analysis.  Plaintiff's sole piece of evidentiary support is one
notation of his weight in a medical record dated March 31, 1995.

(Paper No. 24 at 3 (citing R. at 473).)  Plaintiff points to no
evidence that he was medically diagnosed as obese or that any
physician suggested that his weight aggravated his lumbar disc
disease, osteoarthritis, or any other impairment.  Indeed,
plaintiff did not mention any issues concerning his weight as of
the date last insured during his August 30, 2007 hearing before
the ALJ.  (R. 44-71.)  Accordingly, the court concludes that
plaintiff's citation to one record which merely notes his weight
in the entire 789 page record in this case is insufficient to
generate an issue as to whether plaintiff's alleged obesity
increased the effects of his lumbar disc disease or
osteoarthritis in the lower extremities.[3]

### c. **The ALJ's Residual Functional Capacity ("RFC") Assessment**

At step four, the ALJ concluded that through plaintiff's
date last insured, plaintiff had the RFC to "perform sedentary
work except with a sit or stand option and limited to simple,
routine tasks not involving a lot of public contact." (R. at 28-
29.)  Plaintiff asserts that the ALJ erred at this step by
failing to provide a sufficient narrative discussion of his RFC
assessment.  (Paper No. 24 at 4.)

The determination of RFC is an assessment "based on all the

---

[3] The court notes that plaintiff, in a different section of
his memorandum, stated that his BMI was "as high as 34." (Paper
No. 24 at 2.)  Plaintiff, however, cited to no evidence in the
record for this statistic and provided no explanation as to how
he arrived at this number.  (Id.)

relevant evidence," including all of the claimant's impairments.
20 C.F.R. § 404.945.  It "must include a narrative discussion
describing how the evidence supports each conclusion, citing
specific medical facts (e.g., laboratory findings) and nonmedical
evidence. . . ." SSR 96-8P; 1996 WL 374184 at *7 (S.S.A.); <u>see
also</u> <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989) (ALJ must
evaluate effect of all plaintiff's impairments and adequately
explain his or her RFC findings).

Plaintiff appears to take issue with the ALJ's alleged
failure to account for plaintiff's mental limitations in his
narrative discussion.[4]  (<u>Id.</u>)  For the following reasons, the
court finds that the ALJ's narrative discussion sufficiently
describes how the evidence supports his RFC assessment.  The ALJ
described at length the evidence in the record regarding
plaintiff's Post-Traumatic Stress Disorder ("PTSD"), which was
caused by plaintiff's service in the Vietnam War, as well as the
evidence regarding plaintiff's anxiety symptoms.  (R. at 31-33.)
The ALJ concluded, however, that these impairments did not
interfere with plaintiff's ability to perform work-related
activities at the date last insured.  (R. at 33.)  In reaching
this conclusion, the ALJ gave "significant weight" to the opinion

---

[4] The court notes that it is extremely difficult to
understand this portion of plaintiff's memorandum.  For example,
plaintiff's step four argument falls under the indecipherable
heading: "The ALJ's Mental Limitations Were Sua Sponte and
Entropy Derived."  (Paper No. 24 at 4.)

of plaintiff's treating psychiatrist, Frederick E. Knowles, M.D.,
III, that plaintiff's mental impairments "would not interfere
with work related activities." (Id. at 31-33.)  Since plaintiff
offers no reason why the ALJ should not have afforded Dr.
Knowles' opinion significant weight and points to no evidence in
the record that contradicts Dr. Knowles' opinion, the court
cannot find error with the ALJ's RFC assessment.[5]

---

[5] Plaintiff also argues that the ALJ's RFC determination was
deficient because it "failed to discuss [plaintiff's] ability to
perform work activities in an ordinary work setting on a regular
and continuing basis as is required by SSR 96-8p . . . ." (Paper
No. 24 at 4.)  The ALJ's determination that plaintiff could
"perform sedentary work except with a sit or stand option and
limited to simple, routine tasks not involving a lot of public
contact," however, implicitly contained a finding that plaintiff
could work in an ordinary work setting on regular and continuing
basis.  Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

The court also rejects plaintiff's vague and conclusory
arguments regarding the ALJ's step five analysis.  (Paper No. 24
at 5.)  First, plaintiff states, without explanation, that the
"VE did not help by indicating that the hypothetical claimant
could be unproductive 10-15% of the time and still maintain
employment." (Paper No. 24 at 5.)  The court cannot understand
plaintiff's argument in light of the fact that the VE testified
that such an individual would be "precluded" from work. (R. at
67.)

Second, plaintiff appears to assert that the ALJ erred by
relying on the VE's testimony that the position of surveillance
system monitor, which the VE testified plaintiff could perform,
is a simple job because Hackett v. Barnhart, 475 F.3d 1166 (10th
Cir. 2007), "suggests that it is not simple." (Paper No. 24 at
5.)  The ALJ's determination that plaintiff could only perform
simple tasks, however, is not necessarily inconsistent with a
finding that plaintiff can perform the job of surveillance
systems monitor.  See Marshall v. Barnhart, 2002 WL 32488432 at
*10 (D. Md. Sept. 27, 2002) (holding that ALJ did not err by
concluding that claimant limited to performing "simple,
repetitive, 1,2,3, step tasks" could perform job of surveillance

IV.  **Conclusion**

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (Paper No. 24), and grants defendant's Motion for Summary Judgment (Paper No. 31).  A separate Order shall issue.


Date: 12-08-09                          /s/
                                       Beth P. Gesner
                                       United States Magistrate Judge

———————————————

systems monitor where there was no evidence in record that plaintiff lacked the "common sense" required for the job according to Dictionary of Occupational Titles ("DOT")).

16